ANTEX, INC., Debtor.

**Andrew S. Richardson, Chapter 7 Trustee, Plaintiff–Appellee,**

v.

**Kimberly Preston, Defendant– Appellant.**

**BAP No. RI 08–045.
Bankruptcy No. 05–13541–ANV.
Adversary No. 07–01027–ANV.**

United States Bankruptcy Appellate Panel of the First Circuit.

Dec. 8, 2008.

Roger Stanford, Esq., on brief, for Defendant–Appellant.

Steven J. Boyajian, Esq., on brief, for the Plaintiff–Appellee.

Before HAINES, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Kimberly Preston (the "Appellant") appeals from the bankruptcy court's order granting summary judgment in favor of Andrew S. Richardson, the chapter 7 trustee (the "Trustee"), on his fraudulent transfer complaint. The Appellant asserts that there were genuine issues of material fact regarding her status as a good faith subsequent transferee and whether certain fraudulent transfer claims were barred by the applicable statute of limitations. For the reasons set forth below, we **AFFIRM.**

### BACKGROUND

The Appellant was married to John Robichaud, who was the principal of Antex, Inc. (the "Debtor"). The parties separated in 2001, and ultimately divorced. Under Massachusetts law and pursuant to various orders issued by the probate court, Mr. Robichaud had a duty to support the Ap-

pellant and their minor children. *See* Mass. Gen. Laws ch. 119, § 1, 208. Between September 26, 2002, and the commencement of this bankruptcy case, Mr. Robichaud wrote multiple checks totaling $68,684.25 to the Appellant from the Debtor's bank accounts.

In September, 2005, three petitioning creditors filed an involuntary chapter 7 petition against the Debtor.[1] The bankruptcy court entered an order of relief on November 22, 2005, and the Trustee was duly appointed.

On May 21, 2007, the Trustee filed an adversary complaint against the Appellant under § 544(b) seeking to recover allegedly fraudulent payments pursuant to Rhode Island Uniform Fraudulent Transfer Act (R.I. Gen. Laws §§ 6–16–1, *et seq.*). During the course of discovery, the Trustee served the Appellant with a request for admissions pursuant to Rule 36, asking the Appellant to admit or deny the following:

1. That [the Debtor] was insolvent during the period from January 1, 2002 to the present in that the Debtor's liabilities exceeded the value of its assets.

2. That the [Appellant] never provided any services of value to the Debtor.

3. That the [Appellant] never provided any property of value to the Debtor.

4. That the [Appellant] has received in excess of $60,000 from the Debtor's accounts since January 1, 2002.

5. That the [Appellant] has received in excess of $60,000 from the Debtor since January 1, 2002.

The Appellant did not object or respond to the request, and, therefore, the facts contained therein were deemed admitted and conclusively established. *See* Fed.R.Civ.P. 36.[2]

The Trustee moved for summary judgment. The Appellant objected, arguing that there were genuine issues of material fact regarding her status as a good faith subsequent transferee and whether certain fraudulent transfer claims were barred by the statute of limitations. After a hearing, the bankruptcy court granted the Trustee's motion. The Appellant filed a timely notice of appeal.

### *JURISDICTION*

The Panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). A bankruptcy court's order granting summary judgment is a final order. *See Segarra Miranda v. Garrido Pagan (In re Garrido Jimenez)*, 370 B.R. 878, 880 (1st

---

**1.** The Debtor's Chapter 7 case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, Title III, § 302, 119 Stat. 23 (2005). Accordingly, unless expressly stated otherwise, all references to the "Bankruptcy Code" or to statutory sections herein are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" shall be to the Federal Rules of Civil Procedure.

**2.** Under Rule 36, made applicable to this proceeding by Bankruptcy Rule 7036, a party must answer each matter for which an admission is requested within thirty days or the matter is deemed admitted. *See* Fed.R.Civ.P. 36.

Cir. BAP 2007); *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.),* 335 B.R. 253, 258 (1st Cir. BAP 2005), *aff'd,* 482 F.3d 15 (1st Cir.2007); *Jones v. Svreck (In re Jones),* 300 B.R. 133, 137 (1st Cir. BAP 2003).

### STANDARD OF REVIEW

 The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719 n. 8 (1st Cir.1994). On appeal, the grant of summary judgment is reviewed *de novo. See Garrido Jimenez,* 370 B.R. at 880 (citing *Guzman–Rosario v. United Parcel Serv., Inc.,* 397 F.3d 6, 9 (1st Cir.2005); *Canzano v. Ragosa (In re Colarusso),* 382 F.3d 51, 57–58 (1st Cir.2004)).

### DISCUSSION

### I. The Summary Judgment Standard

Bankruptcy Rule 7056 incorporates Rule 56(c) as the appropriate standard for deciding a motion for summary judgment. Thus, the moving party bears the initial burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Razzaboni v. Schifano (In re Schifano),* 378 F.3d 60, 66 (1st Cir.2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the initial burden is met, the burden shifts to the non-moving party to show that genuine issues of material fact

exist. *Id.* (citing *F.D.I.C. v. Ponce,* 904 F.2d 740, 742 (1st Cir.1990)). The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact. Competent evidence is required. *Id.* (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

If a party fails to respond to a request for admissions under Rule 36, the court may enter summary judgment against that party if the facts deemed admitted are dispositive. *See United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987); *see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 176 n. 7 (3d Cir.1990). A party cannot attack issues of fact established in admissions by resisting a motion for summary judgment. *See Kasuboski,* 834 F.2d at 1350.

### II. Recovery of the Fraudulent Transfers

 The Trustee brought his complaint under § 544(b),[3] which authorizes a bankruptcy trustee to avoid any transfer of a debtor's property that is voidable under applicable state law, including a state's fraudulent conveyance statute. 11 U.S.C. § 544(b). The state law in this case is the Rhode Island Uniform Fraudulent Transfer Act ("RIUFTA"), which provides in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in

---

**3.** The Appellant makes issue of the fact that the Trustee sued under § 544(b), which permits avoidance of fraudulent transfers under state law, rather than § 548, which provides a remedy directly under the Bankruptcy Code. However, under the pre-BAPCPA version

(which is applicable here), § 548 only applied to transfers occurring in the year before the filing of a bankruptcy petition. Therefore, in order to avoid transfers that occurred more than one year before the filing date, the Trustee had to sue under § 544(b).

exchange for the transfer or obligation and the debtor was insolvent at that time, or the debtor became insolvent as a result of the transfer or obligation. R.I. Gen. Laws § 6–16–5(a).[4]

To prove that the payments were fraudulent transfers under the RIUFTA, the Trustee was required to establish the following: (1) there was a creditor who had a claim at the time of the subject transfer; (2) the Debtor made a transfer of property; (3) the Debtor did not receive reasonably equivalent value in exchange for the transfer; and (4) the Debtor was either insolvent at the time or rendered insolvent by reason of the transfer. *See id.* The Appellant does not challenge the first element, and each of the three remaining elements were clearly established by the admitted facts. Thus, the payments were voidable as fraudulent transfers under applicable state law (*see* R.I. Gen. Laws § 6–16–7(a)(1)) and the Trustee was entitled to avoid them pursuant to § 544(b).

Once the trustee has successfully avoided the fraudulent transfer, he may recover the fraudulently transferred assets from either the initial transferee or "any immediate or mediate transferee" of the initial transferee. 11 U.S.C. § 550(a). Under § 550(a)(1), a trustee's right to recover from an "initial transferee" is absolute. *Perrino v. Salem, Inc.*, 243 B.R. 550, 553 (D.Me.1999) (citations omitted). However, the trustee may not recover from a subsequent transferee who accepted the transfer for value, in good faith, and without knowledge of the transfer's voidability. 11 U.S.C. § 550(b). In other words, subsequent transferees may raise the so-called "good faith defense."

■ While the Bankruptcy Code does not define "transferee," it is widely accept-ed that a transferee is one who at least has " 'dominion over the money or other asset, the right to put the money to one's own purposes.' " *Richardson v. United States (In re Anton Noll, Inc.)*, 277 B.R. 875, 879 (1st Cir. BAP 2002) (noting that although the First Circuit has yet to address the issue of transferee status under § 550, courts "have uniformly followed" the test set forth in *Bonded Fin. Servs., Inc., v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988)). Thus, to be the initial transferee, "a transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in lottery tickets or uranium stocks.' " *Id.* (citing *Bonded*, 838 F.2d at 894).

There is no dispute that the Appellant, having taken possession of the Debtor's checks and having cashed them, was a transferee of the Debtor's funds. The Appellant argues, however, that she was not the *initial* recipient of the payments from the Debtor. First, she contends that Mr. Robichaud was the initial transferee because he controlled the Debtor and "took monies from his corporation to support his family and satisfy his support obligation. . . ." Second, she argues that Mr. Robichaud was the initial transferee because the Debtor's financial records identified the payments to the Appellant as either advances to a stockholder (Mr. Robichaud) or as a distribution of capital (again to Mr. Robichaud). She argues, therefore, that there was a genuine issue of material fact regarding her transferee status which precluded summary judgment. We disagree.

## A. Mr. Robichaud's control over the Debtor

The Appellant argues that Mr. Robichaud was the initial transferee of the

---

**4.** Although the Trustee alleged in his complaint that the transfers were also fraudulent under § 6–16–4 (actual intent to hinder, de-lay, or defraud), he limited his summary judgment motion to § 6–16–5 (constructive fraud). Therefore, we need not consider § 6–16–4.

payments because "notwithstanding the fact that the corporate checks were payable to her, the economic reality of the transaction was that [Mr. Robichaud] was withdrawing monies from his corporation to support his family."

Lower courts are split on the question of whether the principal of a debtor corporation is the initial transferee of corporate funds used to satisfy a personal obligation. *See Schafer v. Las Vegas Hilton Corp. (In re Video Depot)*, 127 F.3d 1195, 1198 (9th Cir.1997) (comparing cases). However, all of the circuit courts addressing the issue have concluded that a principal who directs a debtor corporation to issue a check to pay for a personal debt is not an initial transferee. *See, e.g., Schafer*, 127 F.3d at 1198–99; *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. L.P.)*, 99 F.3d 151 (4th Cir.1996); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir.1996); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588 (11th Cir.1990). These courts have held that a principal does not have "dominion and control" over funds unless he or she has "legal dominion and control," in other words, the "right to put those funds to one's own purpose." *Bowers*, 99 F.3d at 155 (emphasis in original); *see also Rupp*, 95 F.3d at 941. The mere power of a principal to direct the allocation of corporate resources does not amount to legal dominion and control. *Bowers*, 99 F.3d at 155.

The undisputed facts show that Mr. Robichaud never had legal dominion and control over the funds. Although Mr. Robichaud controlled the Debtor's operations and arranged for the checks to be issued to the Appellant, the checks were direct transfers from the Debtor's accounts to the Appellant. Once the checks were issued, Mr. Robichaud did not have the right to use the money for any other purpose

than to hand the checks over to the Appellant. The Appellant would have us focus on the "economic realties" of the transactions rather than their form. However, in our view, Mr. Robichaud's lack of legal dominion and control is a point of substance and an important element of the "economic realities."

## B. The Debtor's "advances to a stockholder" or "distribution of capital"

The Appellant also contends that Mr. Robichaud was the initial transferee because the Debtor's financial records identified the payments to the Appellant as advances to a stockholder (Mr. Robichaud) or as a distribution of capital (again to Mr. Robichaud). However, as noted above, there is nothing in the record to support a finding that Mr. Robichaud had legal dominion over the funds after they were disbursed by the Debtor. Characterizing the payments as "advances to a stockholder" or as "distributions of capital" in the company ledger does not establish that Mr. Robichaud ever exercised independent control over the funds. So long as the money remained in the Debtor's account, Mr. Robichaud had no legal right to use it, and once the funds were disbursed, he was a mere courier of the checks. Regardless of how the transfers were characterized on the Debtor's books, the Appellant has not shown how the Debtor's issuance of checks directly to the Appellant gave Mr. Robichaud independent dominion and control over the funds. The Appellant can point to no evidence of any material issue of fact on this point. Summary judgment was appropriate.

## III. Statute of Limitations

█ The Appellant also contends that the bankruptcy court erred in granting summary judgment because the Trustee's

claims (as to some of the payments) were time-barred by the RIUFTA's statute of limitations. Under § 6–16–9(2), a fraudulent transfer claim under § 6–16–5(a) "is extinguished" unless an action is brought within four years after the transfer was made. R.I. Gen. Laws § 6–16–9(2). In this case, the subject transfers occurred between September 26, 2002 and February 22, 2005. The Appellant argues that because the Trustee filed his complaint on May 21, 2007, his claims were time-barred as to any payments made prior to May 21, 2003.

Section § 546(a)[5] governs the time period for bringing an action under § 544, and provides as follows:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202 or 1302 of this title ... and

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The majority of courts addressing the issue have held that as long as the applicable state's limitations period has not expired prior to the petition date, the trustee can bring a fraudulent conveyance action under § 544(b) within the time limitations set forth in § 546(a). *See, e.g.,* *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936 (D.Colo.1990) (citing cases); *see also* *In re Hansen*, 114 B.R. 927, 933 (Bankr.

N.D.Ohio 1990) (noting that § 546(a) extends the state limitations period when the trustee is proceeding under § 544(b), using the status of an unsecured creditor who could have brought the action when the petition was filed). We agree.

None of the subject transfers were insulated from avoidance by the statute of limitations prior to the petition date. The earliest transfer at issue occurred on September 26, 2002. The involuntary petition was filed on September 19, 2005, and the bankruptcy court entered an order for relief on November 22, 2005. Therefore, the four-year statute of limitations had not yet run with respect to any of the subject transfers. *See* R.I. Gen. Laws § 6–16–9(2). Accordingly, pursuant to § 546(a)(1), the Trustee had two years, until November 22, 2007, to commence an action to recover the transfers. The Trustee filed the complaint on May 21, 2007, well before the expiration of that two-year period. Therefore, none of the Trustee's claims were barred by the statute of limitations.

## CONCLUSION

For the reasons set forth above, we conclude that there were no genuine issues of material fact precluding summary judgment. Therefore, we **AFFIRM** the bankruptcy court's order granting summary judgment in favor the Trustee.

---

5. In his brief, the Trustee relies upon § 108(a) to refute the Appellant's statute of limitations claims. However, by its express terms, § 108(a) applies only to actions which *the debtor* could commence pre-petition. It is, therefore, inapplicable to the Trustee's action under § 544(b), in which the Trustee asserts a claim as a putative creditor. The relevant section is § 546(a), which expressly applies to avoidance actions brought under § 544(b). The Trustee's counsel acknowledged this mistake at oral argument.