**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re:  CHAD PAUL DELANNOY,<br><br>Debtor,<br><br>------------------------------<br><br>CHAD PAUL DELANNOY,<br><br>Appellant,<br><br>  v.<br><br>WOODLAWN COLONIAL, L.P.;<br>THOMAS H. CASEY,<br><br>Appellees. | No.  18-60057<br><br>BAP No. 17-1334<br><br>MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Spraker, Kurtz, and Lafferty, Bankruptcy Judges, Presiding

Submitted February 12, 2020[**]
Pasadena, California

Before:  BYBEE, COLLINS, and BRESS, Circuit Judges.

Debtor-Appellant Chad Delannoy appeals from the decision of the

Bankruptcy Appellate Panel ("BAP"), which upheld the bankruptcy court's order

approving the sale, to Delannoy's judgment creditor in a California state court civil

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

action, of Delannoy's rights in his appeal of that very same adverse judgment. We have jurisdiction under 28 U.S.C. § 158(d). While we agree that such sales raise concerns that may warrant disapproval in appropriate cases, we conclude that under the unique circumstances of this case, the bankruptcy court did not abuse its discretion in allowing the sale. We therefore affirm the BAP's decision.

1. In filing for bankruptcy under Chapter 7 on February 3, 2017, Delannoy listed over $1.15 million in total nonpriority unsecured claims against him, which included a September 22, 2016 adverse civil judgment for over $936,000. The judgment had been obtained in Orange County Superior Court by Delannoy's former employers, who were awarded over $782,000 in damages and restitution after a bench trial on their claims against Delannoy based on conversion and money had and received. In its judgment, the superior court expressly found by clear and convincing evidence that "Delannoy committed the foregoing takings with fraud and malice," and the court awarded $60,000 in punitive damages. Delannoy appealed the judgment on November 11, 2016, and the former employers formally assigned that judgment to Appellee Woodlawn Colonial, L.P. ("Woodlawn") on December 5, 2016. After Delannoy filed for bankruptcy, Woodlawn, on May 10, 2017, filed a complaint in bankruptcy court seeking a determination that the judgment was non-dischargeable under 11 U.S.C. § 523(a)(2), (4), and (6).

Delannoy's bankruptcy estate comprised only two main sets of assets—(1) a collection of personal property (consisting primarily of various vehicles and boats) and (2) Delannoy's rights in the appeal of the adverse judgment.[1]  On August 15, 2017, the trustee filed separate motions to sell both sets of assets to Woodlawn. The motion to sell the personal property to Woodlawn for $75,000 was granted. From that $75,000 payment, $20,321 was paid to Delannoy for his exemptions, and nearly $15,000 was paid to satisfy tax claims.  That left less than $40,000 in the estate to cover all fees and expenses of the estate and to pay creditors.  The bankruptcy court also approved the sale of the appeal rights to Woodlawn for $10,000 after Delannoy declined to raise his competing bid of $9,500.  That sale order was then stayed pending Delannoy's appeal to the BAP, which subsequently upheld the order but temporarily continued the stay.  The stay expired, however, after a motions panel of this court on October 11, 2018 denied Delannoy's motion for a further stay.  Woodlawn thereafter completed the sale and then moved in the California Court of Appeal for dismissal of Delannoy's appeal of the adverse judgment.  That court granted Woodlawn's motion on January 7, 2019.

The sole issue before us is the propriety of the bankruptcy court's sale order, which was made under 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure

---

[1] No party contests that Delannoy's defensive appeal rights are a species of property that may be transferred under California law, and we therefore assume that point for purposes of this appeal.

9019. We review decisions of the BAP de novo, and we apply the same standard of review to the bankruptcy court's decision that the BAP applied. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009). A bankruptcy court's decisions to approve a sale of estate property under § 363 or to approve a compromise of a claim under Rule 9019 are reviewed for abuse of discretion. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir. 2001); *Probasco v. Eads (In re Probasco)*, 839 F.2d 1352, 1357 (9th Cir. 1988). We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Price v. U.S. Trustee (In re Price)*, 353 F.3d 1135, 1138 (9th Cir. 2004).

2. Because the sale of Delannoy's appeal rights to Woodlawn was certain to terminate Delannoy's appeal, the bankruptcy court properly evaluated that sale as both (1) a sale of an estate asset under § 363 and (2) a compromise under Rule 9019. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 290 (B.A.P. 9th Cir. 2005). To satisfy § 363, the sale must be proposed in good faith and for a proper purpose, *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996), and realize "optimal value . . . [for] the estate under the circumstances," *In re Lahijani*, 325 B.R. at 288. To satisfy Rule 9019, the compromise must be "fair and equitable" in light of the odds of Delannoy winning his appeal, the complexity and

4

costs of continued litigation, and the interests of the creditors. *Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1381 (9th Cir. 1986).[2]

We agree that a sale of defensive appellate rights raises special concerns, particularly if the appeal has substantial merit that could wipe out a significant claim against the estate, thereby benefitting both the debtor and other creditors. Additional concerns are presented where, as here, the adverse judgment being appealed by the debtor contains fraud and malice findings that the judgment creditor could seek to use to support a potential claim that the judgment debt is non-dischargeable, thereby impeding the debtor's ability to obtain a fresh start. As Delannoy notes, a sale that leaves such a judgment intact could in some circumstances raise concerns not unlike those addressed in 11 U.S.C. § 524(c) with respect to agreements involving payment of dischargeable debt. Nonetheless, based on three case-specific considerations, we conclude that on this record the bankruptcy court did not abuse its discretion in allowing the sale to effectively settle the state court litigation in Woodlawn's favor.

First, the bankruptcy court correctly concluded that Delannoy had failed to make any substantial showing that the appeal would have merit. After reviewing

---

[2] *Martin* identifies, as an additional factor, "the difficulties, if any, to be encountered in the matter of collection" of a favorable judgment, 784 F.2d at 1381 (citation omitted), but that factor has no applicability in the context of a sale of the defensive appellate right to challenge a judgment *against* the debtor.

the declaration submitted by Delannoy's state appellate counsel discussing the potential issues on appeal, as well as the superior court's detailed findings in its rulings, the bankruptcy court found that Delannoy's appeal was a "longshot." Delannoy did not challenge that finding before the BAP, and he did not challenge it in his opening brief in this court. And for good reason: the declaration mentions in vague and conclusory terms only a single potential appellate issue concerning the alleged refusal to enforce subpoenas for certain unspecified documents. In evaluating the sale, the bankruptcy court thus properly considered that the appeal had little, if any, prospect of success.

Second, while the sale order was certainly not helpful to Delannoy's position vis-à-vis the dischargeability of the judgment debt, there are substantial reasons to doubt that it made Delannoy's position materially worse in that regard. As we have already explained, Delannoy does not contest that his appeal was a "longshot," and a failure of his appeal on the merits would have put him in no worse a position vis-à-vis dischargeability than the sale did. Moreover, given the superior court's detailed description of the evidence concerning Delannoy's underlying conduct, as well as Delannoy's guilty plea to misdemeanor grand theft arising from distinct but related actions, Woodlawn's ultimate likelihood of success on its non-dischargeability claim seemed significant, even without any additional preclusion arguments made available by the sale.

Third, at the time the bankruptcy court ruled, the estate had very few assets, and the court reasonably concluded that, as things then stood, it would be in the interests of creditors to resolve the matter promptly in order to avoid having the estate's limited assets be consumed by further administrative costs. As the bankruptcy court recognized, the (low) probability that the appeal would succeed in setting aside or reducing the adverse judgment and thereby increase the other creditors' share of the estate was offset by the fact that there might be nothing left at that point for the creditors to share. Put another way, it was not clearly erroneous for the bankruptcy court to find that, for the minority creditors, 9.45% or so of a claims pool with an extra $10,000 in it—or even an extra $500 in it, if the competing bid from Delannoy is considered—would be better than potentially 100% of nothing. Indeed, none of the other creditors showed up at the sale hearing to object to the sale. We thus reject Delannoy's argument that, at the time the bankruptcy court made its ex ante judgment about what was in the best interests of the creditors, the proposed sale should have been deemed to be one that "would yield no benefit to unsecured creditors." *In re KVN Corp.*, 514 B.R. 1, 6 (B.A.P. 9th Cir. 2014).

Based on this confluence of case-specific factors, we conclude that the bankruptcy court did not abuse its discretion in approving the transaction as a sale under § 363 and as a settlement under Rule 9019. In light of those considerations,

the court permissibly found that the trustee acted in good faith and with a proper purpose, that the settlement of the appeal was fair and equitable, and that the sale and settlement were in the best interest of the creditors. Given the uniqueness of this record, we agree with the BAP's observation that "[t]he circumstances presented in this appeal make it a poor candidate for exploring the outer boundaries of the trustee's right to sell defensive appeal rights," and our ruling in this case is not an endorsement of that practice in any other context.

The decision of the BAP is AFFIRMED.